### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

DAVID JARNUTOWSKI            :
  Plaintiff,              :
                             :
v.                           :    Civil No. 3:13-cv-100(AVC)
                             :
PRATT & WHITNEY, A DIVISION. :
OF UNITED TECHNOLOGIES CORP. :
  Defendant.             :

### RULING ON THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is an action for damages in which the plaintiff, David Jarnutowski, alleges that the defendant, Pratt & Whitney ("Pratt"), unlawfully terminated his employment on the basis of his age.  It is brought pursuant to the Age Discrimination in Employment Act ("ADEA")[1] and common law tenets concerning breach of contract, promissory estoppel, and breach of the covenant of good faith and fair dealing.

Pratt has filed the within motion for summary judgment on all counts pursuant to Rule 56 of the Federal Rules of Civil Procedure, arguing there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law.

The issues presented are: 1) whether Jarnutowski has provided sufficient evidence that his termination occurred under circumstances giving rise to an inference of discrimination, and if so, whether Jarnutowski has provided sufficient evidence to

---

[1] 29 U.S.C. § 621.

determine that Pratt's nondiscriminatory reason for terminating his employment was pretextual; 2) whether an implied contract existed between Jarnutowski and Pratt; 3) whether Pratt made a clear and definite promise to Jarnutowski, and if so, whether Jarnutowski relied on that promise; and 4) whether the statutory remedies available to Jarnutowski through the ADEA preclude him from bringing a cause of action for breach of the implied covenant of good faith and fair dealing.

For the reasons that follow, the motion for summary judgment is GRANTED.

**FACTS**

Examination of the complaint, pleadings, local rule 56 statements, the exhibits accompanying the motion for summary judgment, and the responses thereto, disclose the following, undisputed, material facts:

In 1984, Jarnutowski began working for Pratt.  Pratt "designs, manufactures, and services commercial and military aircraft engines and other related products."  In 2010, Jarnutowski worked as a customer fleet director ("CFD")[2] at International Aero Engines ("IAE"), which was a consortium between Pratt and a number of other entities that "manufactured and sold the V2500 Jet Engine to both domestic and international

---

[2] A CFD is also known as a "customer support director" or a "customer support and sales director."

customers."[3]  In that position, Jarnutowski managed 1) contracts between IAE and the customer, 2) technical and warranty issues, and 3) sales.  He was responsible originally for customers located in "continental Europe, Russia, and the countries that comprised the former Soviet Union."  His primary customers included Lufthansa, German Wings, and Astana.

In 2008, James Masotti, the regional vice president for Europe and leasing at IAE, and Bruce Hall, the senior CFD at IAE, began supervising Jarnutowski.  For the year 2008, Masotti rated Jarnutowski as "fully competent," but listed low ratings in "key competencies of strategic leadership and business innovation."

In 2009, one of Jarnutowski's responsibilities included developing a strategy on how IAE could grow its business in Russia.  This task required Jarnutowski "to determine what was needed to get the airline operating and doing business in the region."  According to Jarnutowski, the political climate in Russia at that time prevented him from creating a strategy. Moreover, Pratt did not allow Jarnutowski to attend two conferences in 2008 and 2009, which hindered his ability to develop a relationship with people in Russia.

Jarnutowski was also in charge of developing a field representative manual.  Jarnutowski states that he volunteered

---

[3] IAE dissolved as a joint venture in 2012.

for this task, but he did not know of the expectation to complete it by himself in 2009.  Although he made progress throughout 2009, Jarnutowski concedes that he did not complete this task until 2010.

In July 2009, Masotti and Hall met with Jarnutowski to discuss the lack of progress made on his projects.  They criticized various projects on which he worked and noted their dissatisfaction with certain tasks assigned to him.

According to Hall, in 2009, Masotti and Hall reduced Jarnutowski's workload from a typical CFD.  Where most CFDs managed eight to twelve accounts, Masotti and Hall gave Jarnutowski just two in an attempt to lighten his workload and correct his deficiencies.

In February 2010, Jarnutowski received an "unsatisfactory" rating on his performance evaluation tool for the year 2009. The performance evaluation tool allows an employee and his or her supervisors to rate the employee's performance of various "objectives" and "competencies."  The objectives section of the tool utilizes five ratings: 1) above target; 2) target; 3) progressing; 4) below target; and 5) objective no longer applies.  The competency section utilizes five different ratings: 1) competency expertly applied; 2) competency fully evident; 3) competency somewhat evident; 4) competency not evident or not adequate; and 5) not applicable/no observation.

4

In the objectives section, Masotti and Hall assessed Jarnutowski as "below target" once, "progressing" in five objectives, and "target" in four objectives.  In the competency section, Masotti assessed Jarnutowski as fully competent in four areas, somewhat competent in eight areas, and not competent in two areas.  Hall assessed Jarnutowski as fully competent in three areas and somewhat competent in ten areas.

Specifically, the assessment noted that Jarnutowski consistently took a passive approach, did not project "confidence and clarity in data presented," and did not effectively communicate his thoughts.  With respect to business innovation, Masotti noted that Jarnutowski "[c]an loose [sic] sight of big picture and become lost in the weeds."  Hall stated that "[Jarnutowski] needs to venture out of his comfort zone." Notably, "[a]lthough Hall and Masotti were critical of Plaintiff's overall performance in his role, they nevertheless repeatedly praised Plaintiff for his technical skills."  Masotti provided the following summary of Jarnutowski's performance in 2009:

> Dave although pleasant in approach struggled to deliver much of the expected result in 2009.
>
> Despite ongoing discussions with Bruce, Jim and Andy, Dave maintained a passive approach and struggled to remain focused on the task required to sucessfully [sic] complete his key objectives.

Not delivering a successful Russia/CIS customer support plan and a field rep manual was most disappointing.  Of equal concern is Dave's reluctance to take the lead when it came to resolving customer issues that fall into his area of responsibility.  "Leaves the ball on the field for someone else to take"

After receiving the "unsatisfactory" rating on his performance evaluation tool, Hall and Masotti placed Jarnutowski on an Employee Improvement Plan ("EIP").  This plan "is designed to address an employee's failure to demonstrate an effective level of job performance in their current role and grade . . . [which] gives the employee an opportunity to raise their performance to satisfactory levels and avoid the need for additional disciplinary action."

Specifically, the EIP assigned four distinct tasks to Jarnutowski.  First, it required Jarnutowski to create and complete the field manual by April 30, 2010.  Second, it required Jarnutowski to negotiate or create an action plan to resolve two issues with Lufthansa Technik ("LHT").[4]  Third, the EIP required Jarnutowski to address a contract issue with German Wings and renegotiate the agreement.  Fourth, it required Jarnutowski to create and deliver an executive review presentation on German Wings and LHT.

During the EIP period, Hall met with Jarnutowski for an hour or more once a week.  Hall states that these meetings

---

[4] LHT is the technical overhaul shop of Lufthansa Corporate.

helped him track Jarnutowski's progress and keep Jarnutowski
focused, but Jarnutowski claims that Hall used this time to
criticize him.  Jarnutowski also met with Hall, Masotti, and a
human resources representative for a "First Review and
Assessment," a "Second Review and Assessment," and a "Final
Review and Assessment," in March, April, and June, respectively.

By the end of the EIP period, Jarnutowski had completed two
out of the four objectives.  Specifically, he completed the
field manual and delivered an executive review presentation.
Jarnutowski's supervisors indicate that a number of individuals
were instrumental in helping Jarnutowski complete these tasks
and that Jarnutowski required supervision and coaching.
Jarnutowski maintains, however, that he took many proactive
approaches to complete the objectives.

As to the remaining two objectives, Jarnutowski states that
the tasks could not be completed at that time due to the
dependency on third party cooperation.  His supervisors contend
that Jarnutowski failed to demonstrate any significant progress
or plan, but Jarnutowski argues that the lack of cooperation
from third parties made the tasks impossible.

The final section of the EIP captioned "Performance Summary
and Next Actions" included a box checked for "EIP Unsuccessfully
Completed."  This section provided that on July 1, 2010, Pratt
would reclassify or demote Jarnutowski to an L5, with no change

7

in pay.  Masotti stated that "the competencies required to be a
successful L4 were not being demonstrated" and "it might be
easier to help him find another position within the company."
Jarnutowski maintains, however, that he operated at the same
level during the entirety of his time as an L4 and that his
reviews and demotion prevented him from transferring laterally
within the company.  In reclassifying Jarnutowski as an L5, his
supervisors allocated his CFD responsibilities to other
employees.  This section further outlined a plan for Jarnutowski
to stay at the company in a "temporary function" for up to 90
days, which, according to the section, "w[ould] provide Dave
some time to find a new position with PW or UTC."  In reviewing
the EIP with Jarnutowski, his supervisors told him that they
would try to find him another job with the company.

     According to Hall, Hall called a number of supervisors at
Pratt about placing Jarnutowski in their departments.
Jarnutowski attended several interviews, but ultimately failed
to obtain another position.  On October 31, 2010, Hall and a
human resources representative met with Jarnutowski to inform
him that his employment had been terminated.

     At the time of his termination, Hall was 50 years old,
Masotti was 53 years old, and Jarnutowski was 49 years old.
Moreover, four out of the other five CFDs were over 40 years
old.  Specifically, two CFDs were older than 49 years old and

one was 49 years old.  Following the termination, David Kohlun took on Jarnutowski's remaining customers, German Wings and Lufthansa.  At that time, Kohlun was 39 years old.

### STANDARD

A motion for summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'"  Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981) (quoting Heyman v. Commerce and Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975)).

A dispute concerning material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The court must view all inferences and ambiguities in a light most favorable to the nonmoving party.  See Bryant v. Maffucci, 923 F.2d 979, 982 (2d

9

Cir. 1991).  "Only when reasonable minds could not differ as to
the import of the evidence is summary judgment proper."  Id.

A dispute concerning material fact is not created by a mere
allegation in the pleadings, or by surmise or conjecture.
D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998); see
also Stuart & Sons, L.P. v. Curtis Pub. Co., Inc., 456 F.
Supp.2d 336, 342 (D. Conn. 2006) (citing Applegate v. Top
Assoc., Inc., 425 F.2d 92, 96 (2d Cir. 1970); Quinn v. Syracuse
Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980)).
Also, "[c]onclusory allegations will not suffice to create a
genuine issue."  Del. & Hudson Ry. Co. v. Conrail, 902 F.2d 174,
178 (2d Cir. 1990).

## DISCUSSION

## I.  Age Discrimination in Employment Act

The Age Discrimination in Employment Act ("ADEA") provides,
inter alia, that it is unlawful for an employer "to discharge
any individual or otherwise discriminate against any individual
with respect to his compensation, terms, conditions, or
privileges of employment, because of such individual's age."  29
U.S.C. § 623 (a)(1).  The McDonnell Douglas burden-shifting
framework governs claims brought pursuant to the ADEA.  See
Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014)
(citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).

Under this burden-shifting framework, the plaintiff must first establish a prima facie case of age discrimination. Delaney v. Bank of Am. Corp., 766 F.3d 163, 168 (2d Cir. 2014). Once a plaintiff establishes a prima facie case, a presumption of discrimination exists "unless the defendant proffers a 'legitimate, nondiscriminatory reason' for the adverse employment action, in which event, the presumption evaporates and the plaintiff must prove that the employer's proffered reason was a pretext for discrimination." McPherson v. N.Y.C. Dep't of Educ., 457 F.3d 211, 215 (2d Cir. 2006).

### A. Prima Facie Case

To establish a prima face case of discrimination pursuant to the ADEA, a plaintiff must show that "(i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001). A plaintiff's burden in establishing a prima facie case is not an onerous one. See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981); Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 467 (2d Cir. 2001).

Here, the first, second, and third elements of a prima facie case of age discrimination are not in dispute.  With respect to the fourth element, however, Pratt contends that Jarnutowski has failed to present any evidence that the termination of his employment occurred under circumstances giving rise to an inference of discrimination.

### i. Replaced by a Younger Worker

To establish the fourth prong of his prima facie case, Jarnutowski first argues that Pratt replaced him with a significantly younger employee, David Kohlun, who was ten years younger than Jarnutowski.  In response, Pratt contends that Hall did not know of the age discrepancy between Jarnutowski and Kohlun, which is evidenced by Hall's belief that Kohlun was "in his 40s" even though he was 39 years old.  Jarnutowski responds that the United States Supreme Court's decision in O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996), suggests that Hall's knowledge as to Jarnutowski's exact age is irrelevant.

"[A]n employer's decision to replace an older worker with a significantly younger one can support an inference of intentional age discrimination . . . ."  Woodman v. WWOR-TV, Inc., 411 F.3d 69, 78-79 (2d Cir. 2005) (citing O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996)).  The older worker "must offer some evidence of a defendant's

knowledge as to the significant age discrepancy to support a
*prima facie* inference of discriminatory intent." <u>Woodman v.
WWOR-TV, Inc.</u>, 411 F.3d 69, 90 (2d Cir. 2005).  In other words,
"[a] replacement decision cannot be 'based on' the
discriminatory criterion of age unless an employer knows that it
has replaced an older employee with a significantly younger
worker." <u>Id.</u> at 80.  "Without some evidence that an employer
knew that it was replacing an older worker with a younger one,
intentional discrimination cannot be the 'required conclusion.'"
<u>Id.</u> at 81.

The second circuit has noted additionally that "an ADEA
plaintiff's evidentiary burden to establish a defendant
employer's knowledge as to her age relative to that of a
replacement is minimal."  <u>Id.</u> at 83.  It also has recognized
that "in the majority of age discrimination cases, a defendant
employer's knowledge of a plaintiff's age will be undisputed
because employers routinely maintain employee age information in
their personnel files or are generally aware of employees'
relative ages from personal on-the-job contact."  <u>Id.</u> at 80.
For example, the second circuit has found that an employer's
review of prior documents listing the plaintiff's date of birth
"coupled with [the replacement's] resume, which suggested that
she was in her early 30s, was sufficient for [the plaintiff] to
create an issue of fact for the jury as to the fourth element of

her prima facie case."  Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 130 (2d Cir. 2012).

Here, the court concludes that Jarnutowski has failed to present any evidence of Pratt's knowledge as to the significant age discrepancy between Jarnutowski and Kohlun to support a prima facie inference of discriminatory intent.  Instead, Jarnutowski relies upon the erroneous contention that "the O'Connor court would advise us that Hall's knowledge as to Plaintiff's exact age is irrelevant."  This argument belies second circuit precedent directly on point, which states that "O'Connor does not hold that a defendant's knowledge as to a plaintiff's relative age is irrelevant at the prima facie stage."  Woodman v. WWOR-TV, Inc., 411 F.3d 69, 80 (2d Cir. 2005).  It is undisputed that at the time Pratt terminated Jarnutowski's employment, "Hall did not know the ages of the other CFDs,"[5] which includes Kohlun.  Without any evidence to support that Hall knew that Kohlun was significantly younger than Jarnutowski,[6] the court concludes that the decision to have

---

[5] It is also undisputed that Hall believed that Kohlun was "in his 40s." Although the parties agree to this fact, the deposition transcript does not support it.  Specifically, the deposition took place on July 18, 2014, and the plaintiff's counsel asked the deponent "How old is Dave Kohlun?"  The response, "He's in his 40s, I believe," does not support a finding that Hall believed Kohlun was in his 40s on October 31, 2010, the date of Jarnutowski's termination.  Instead, it merely supports that Hall believed Kohlun was in his 40s on July 18, 2014.

[6] The court can infer that Hall knew of Jarnutowski's age from a note indicating that Jarnutowski was 1.4 years away from retirement.  However, the

Kohlun absorb Jarnutowski's duties does not support an inference of intentional age discrimination.

Moreover, the court is not convinced that Kohlun "replaced" Jarnutowski at Pratt for purposes of an inference of discrimination.  It is undisputed that while Pratt continued to employ Jarnutowski, Jarnutowski's supervisors allocated his direct customer responsibilities to other CFDs and sales directors.  Moreover, Pratt did not hire a replacement at all, but rather, a younger CFD absorbed a majority of Jarnutowski's job duties following his termination.  A younger employee does not "replace" another employee simply because he assumed his or her duties.  See Pronin v. Raffi Custom Photo Lab., Inc., 383 F. Supp. 2d 628, 639 (S.D.N.Y. 2005) ("Merely because a younger employee assumed some of [the plaintiff's] responsibilities does not mean that he was 'replaced' by a younger employee."); Wado v. Xerox Corp., 991 F. Supp. 174, 205 (W.D.N.Y. 1998) ("Merely because [the plaintiff's] duties continued to be performed by a younger person does not support an inference of age discrimination.").  Jarnutowski's testimony at a deposition acknowledges that his work was distributed to "maybe three individuals," but that Kohlun ultimately took over the majority

---

court cannot infer from the record that Hall or any of Jarnutowski's supervisors knew of Kohlun's age.  Therefore, because these facts do not demonstrate that Hall knew that Kohlun was significantly younger than Jarnutowski, the actual age difference does not support an inference of intentional age discrimination.

of the job.  These facts further demonstrate that Pratt did not
hire or promote a replacement.  See Delaney v. Bank of Am.
Corp., 908 F. Supp. 2d 498, 505 (S.D.N.Y. 2012) (noting that an
employer's decision to "divv[y] up" the plaintiff's work to
younger employees is not evidence that "anyone else, younger or
older, was hired or promoted to fill his spot").  The
circumstances here provide additional support that an inference
of intentional age discrimination is lacking.

### ii. Preferential Treatment

Jarnutowski next argues that "younger employees were
treated preferentially to Jarnutowski in 2008 and 2009 when they
were permitted to go to the annual conference and Jarnutowski
was not."  Jarnutowski further states that he "was the only CFD
not permitted to attend the conference" in 2009.  Pratt responds
that Jarnutowski mischaracterizes the evidence in the case, as
his deposition specifies that "newer" employees, not "younger"
employees went to the conferences.

It is well-established that the circumstances that give
rise to an inference of discrimination may include "preferential
treatment given to employees outside the protected class."
Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir.
1996); see also Leibowitz v. Cornell Univ., 584 F.3d 487, 502
(2d Cir. 2009).  Treating younger employees differently "is both
prima facie evidence of discrimination . . . and evidence that

the reasons given by [the employer] for firing [the plaintiff] were pretextual. <u>Gorzynski v. JetBlue Airways Corp.,</u> 596 F.3d 93, 108 (2d Cir. 2010).

The court agrees with Pratt that the evidence does not support that the company preferred younger employees to Jarnutowski. Jarnutowski stated at his deposition that Hall and Masotti did not permit him to attend the annual conference because the "newer guys" needed the experience to meet their new customers and gain technical knowledge. The record is devoid of any evidence that the "newer" CFDs were also "younger."[7] Therefore, the fact that "newer" employees attended an annual conference does not lend support for an inference of age discrimination.

### iii. Other Circumstantial Evidence

Jarnutowski next contends that a meeting he attended in 2008 "where an employee's age was discussed and a plan was enacted to 'force the older employee out'" is circumstantial evidence of age discrimination sufficient to raise an inference of discrimination. Pratt responds that "the alleged meeting is

---

[7] In fact, at the time Pratt terminated Jarnutowski's employment, two out of the five CFDs were older than Jarnutowski and one CFD was the same age as him. The court notes that this fact does not directly suggest that the employees who attended the conferences in 2008 and 2009 were not younger than Jarnutowski, as the court is unable to determine whether the CFDs in 2008 and 2009 were the same CFDs on October 31, 2010. However, without any evidence to suggest that the employees who attended the conference were, indeed, younger than Jarnutowski, and not just "newer," these facts offer persuasive evidence that the "newer guys" may not also be "younger."

not evidence from which a reasonable jury could infer Hall and Masotti harbored a discriminatory animus."

Jarnutowski testified at his deposition that "[t]he purpose of this meeting was . . . to kind of . . . force out [a rep] into retirement."  He also testified that "one of the high priority individuals [at the meeting] said, 'How can we get rid of this guy without him suing us?'"  Jarnutowski could not remember, however, who made this comment or who the comment referenced.  Moreover, Jarnutowski stated that the individuals at the meeting wanted to formulate a plan to "make it attractive to retire . . . or to possibly offer him . . . some other lower job within the company."  Ultimately, Jarnutowski admitted that Pratt offered the individual another position at the company.[8]

The circumstances that give rise to an inference of discrimination may include "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus."  Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996).  The second circuit has recognized, however, that "remarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark."  Tomassi v. Insignia Fin. Grp., Inc., 478 F.3d 111,

_____

[8] According to Jarnutowski, the employee "fared very well."

115 (2d Cir. 2007), abrogated on other grounds by Gross v. FBL
Fin. Servs., Inc., 557 U.S. 167, 177-78 (2009); see also Sloan
v. United Techs. Corp., 596 Fed. App'x 35, 36 (2d Cir. 2015).

The court concludes that the comment in particular and the
meeting in general do not raise an inference of age
discrimination.  The comment and the meeting involved a
different employee and did not involve terminating the
employee's employment.  The meeting also took place two years
prior to the termination of Jarnutowski's employment.  Even if
the court found the statement to express a discriminatory
sentiment, a statement made by an unknown person about an
unknown employee two years prior to the termination of
Jarnutowski's employment does not raise an inference of age
discrimination.  See Tomassi, 478 F.3d at 115 (noting that "the
more remote and oblique the remarks are in relation to the
employer's adverse action, the less they prove that the action
was motivated by discrimination").  Moreover, an employer's
attempt to conduct itself in conformity with the law to avoid
employment litigation certainly cannot be grounds for raising an
inference of age discrimination.  Therefore, the meeting and the
remark do not demonstrate that Jarnutowski's supervisors were
motivated by any discriminatory sentiment.

Jarnutowski finally argues that "[a] comment in
Jarnutowski's file noting that he was '1.4 years to big bump in

retirement' indicates that Jarnutowski's supervisors were well aware of Plaintiff's age and what that age would mean for pension purposes."  Pratt responds that the plaintiff takes this notation out of context and that the comment actually "provides yet another example of Hall and Masotti trying to assist Plaintiff and of plaintiff's inability or unwillingness to take ownership of the situation."

The note provides, in relevant part, two bullet points. The first bullet point states "Down Grade to L5" with a notation underneath stating "1.4 years to big bump to retirement."  The second bullet point states "Find A New Job" with a notation underneath stating "Dave to get off butt & take ownership over this."  Hall testified at his deposition that he wrote the note, but he did not know what it meant.[9]

The court concludes that the comment does not give rise to an inference of age discrimination.  Taken alone, the notation merely acknowledges that Jarnutowski's pension benefits will vest after 1.4 more years of working at the company.  When the comment is read in context with the remaining parts of the note, it further demonstrates that Jarnutowski's supervisors did almost everything possible to find Jarnutowski alternative employment at the company.

---

[9] Hall further stated that somebody else told him that information and he simply jotted it down.

Even if the court could infer from the comment that Pratt terminated Jarnutowski's employment to prevent his pension benefits from vesting, such conduct would not violate the ADEA. This court has held that "[a]n employer does not violate the ADEA if it fires an employee for the sole reason that it wishes to prevent that employee's pension benefits from vesting." Weeks v. Aetna Life Ins. Co., Civ. No. 3:93CV502(AVC), 1994 U.S. Dist. LEXIS 21694, at *18 (D. Conn. Apr. 22, 1994); see also Hazen Paper Co. v. Biggins, 507 U.S. 604, 612 (1993); cf. Markovich v. City of N.Y., 588 Fed. App'x 76, 77 (2d Cir. 2015) (noting that statements made about an employee's pension "do not permit a reasonable inference that the actual motivation for his 'U' ratings was related to his age"). Therefore, the court concludes that this note does not raise an inference of age discrimination.

Taken together, Jarnutowski cannot establish a prima facie case of discrimination. The record is devoid of any evidence that the termination of Jarnutowski's employment occurred under circumstances giving rise to an inference of discrimination. A lack of such evidence leaves the fourth prong of a prima facie case of age discrimination unsatisfied.

### B. Legitimate, Nondiscriminatory Reason for Termination

Assuming, *arguendo*, that Jarnutowski could establish a prima facie case of age discrimination, Pratt has articulated a

legitimate, nondiscriminatory reason for terminating Jarnutowski's employment.  Pratt argues that it terminated Jarnutowski's employment for the legitimate, nondiscriminatory reason that he "failed to complete successfully the EIP on which he was placed after receiving an 'Unsatisfactory' rating for his 2009 performance."  It does not appear to the court that Jarnutowski contests whether Pratt's assertion is a legitimate, nondiscriminatory reason.[10]  Jarnutowski responds that this reason is "implausible" and "disingenuous" given his work history, but his arguments center around the pretextual nature of the reason.

An employer's dissatisfaction with an employee's work performance can be a legitimate, nondiscriminatory reason for terminating employment.  See Jackson v. Syracuse Newspapers, 574 Fed. App'x 36, 37 (2d Cir. 2014); Dorfman v. Doar Commc'ns, Inc., 314 Fed. App'x 389, 391 (2d Cir. 2009); Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 93 (2d Cir. 2001).  The employer's burden in establishing a legitimate, nondiscriminatory reason is not demanding, as it must only offer a nondiscriminatory explanation for the employment decision.  Bickerstaff v. Vassar Coll., 196 F.3d 435, 446 (2d Cir. 1999).

---

[10] Jarnutowski states that Pratt's claim that his "performance was unsatisfactory and that he failed to complete his EIP" is a "legitimate, nondiscriminatory reason for terminating the plaintiff's employment" if it is taken as true.  He also asserts that "negative performance evaluations may present a legitimate business reason for terminating an employee's position."

It need not prove nondiscrimination, but only that evidence exists to "permit the conclusion that there was a nondiscriminatory reason for the adverse action."  See Mattera v. JPMorgan Chase Corp., 740 F. Supp. 2d 561, 574 (S.D.N.Y. 2010) (emphasis omitted) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)).

Here, Pratt has presented a well-documented account of the events leading up to the termination of Jarnutowski's employment, including performance evaluations and detailed plans to remedy Jarnutowski's deficiencies.  This evidence articulates and offers a legitimate, nondiscriminatory explanation for the employment decision.  Therefore, the court concludes that Pratt has satisfied its burden.

### C. Pretext of Discrimination

Because Pratt has articulated a nondiscriminatory reason for terminating Jarnutowski's employment, namely Jarnutowski's poor work performance, the burden shifts back to Jarnutowski to show that Pratt's reason is merely a pretext for age discrimination.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804 (1973); see also Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010) (noting that once a defendant proffers a nondiscriminatory reason, "the plaintiff can no longer rely on the prima facie case, but may still prevail if [he] can show that the employer's determination was in fact the

result of discrimination").  To determine whether a proffered

reason for terminating an employee's employment was a pretext

for age discrimination, courts look to whether the plaintiff has

raised "sufficient evidence upon which a reasonable jury could

conclude by a preponderance of the evidence that her age was a

'but for' cause of [the employer's] decision to fire her."

Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 107 (2d Cir.

2010).  Although "direct evidence of an employer's

discriminatory intent will rarely be found . . . a plaintiff

must provide more than conclusory allegations of discrimination

to defeat a motion for summary judgment."  Schwapp v. Town of

Avon, 118 F.3d 106, 110 (2d Cir. 1997).  "It is well settled

that an employee's unsupported subjective belief that she was

being discriminated against is insufficient to establish that

the employer's articulated legitimate reason for its employment

action is a pretext for illegal discrimination."  Mixon v.

Buffalo Med. Grp., P.C., No. 10-cv-1043(SR), 2013 WL 597594, at

*6 (W.D.N.Y. 2013).

### i. Performance Evaluations

Jarnutowski cites to a history of positive performance

evaluations and merit-based salary raises to attempt to show

pretext.  He also argues that "the negative performance review

of Jarnutowski's 2009 performance was composed with the specific

intent to provide a documented reason to terminate Jarnutowski's employment other than his age."

Pratt responds that Jarnutowski "was generally a satisfactory performer for a number of years," but that "by 2009, [his] performance had serious deficiencies."  Pratt asserts that "[t]his is not a case of an employee with an exemplary work history who is suddenly and inexplicably terminated," as Jarnutowski "received a year's-worth of counseling, coaching, warnings, and notice of his deficient performance."

Courts have recognized that prior positive performance evaluations cannot, without more, demonstrate that later negative evaluations are pretextual.  See, e.g., Barker v. Ellington Bd. of Educ., No. 12-cv-313(JCH), 2013 WL 6331159, at *13 n.13 (D. Conn. Dec. 5, 2013); Mattera v. JPMorgan Chase Corp., 740 F. Supp. 2d 561, 576-77 (S.D.N.Y. 2010); Hirschberg v. Bank of Am., N.A., 754 F. Supp. 2d 500, 518 (E.D.N.Y. 2010); Iverson v. Verizon Commc'ns, No. 08-cv-8873(SAS), 2009 WL 3334796, at *5 (S.D.N.Y. Oct. 13, 2009); Ofoedu v. St. Francis Hosp. & Med. Ctr., No. 3:04cv1707(PCD), 2006 WL 2642415, at *16 (D. Conn. Sept. 13, 2006).  As one court has acknowledged, "performance that is deemed adequate for a long period of time can become inadequate in a changed economic climate, or following a shift in job responsibilities, or in the eyes of a

25

different supervisor."  Jensen v. Garlock, 4 F. Supp. 2d 219, 223 (W.D.N.Y. 1998).

Here, the evidence Jarnutowski identifies is insufficient to show that the negative performance evaluations were pretextual.  Jarnutowski's history of positive performance evaluations was not followed by a precipitous decline in performance.  Instead, his supervisors informed him of his deficiencies in July 2009 and worked with him for over fifteen months before terminating his employment.  They met with Jarnutowski on a weekly basis to discuss his progress on a number of tasks, and although Jarnutowski maintains that his supervisors only criticized his work during these meetings, the record demonstrates that the meetings were used to check in on and track his progress.  Jarnutowski offers nothing but speculation and conjecture that Pratt engaged in this counseling only to provide a documented reason for the eventual termination of his employment.  To defeat a motion for summary judgment, however, the nonmoving party may not rely on such surmise. D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998). Accordingly, the court concludes that Jarnutowski's prior positive performance evaluations and salary raises are insufficient to show pretext.[11]

---

[11] The court also notes that Jarnutowski's signature appears at the bottom of every review during the EPI period and only the final review includes a note that he did not "entirely agree with final comments."  Courts have recognized

### ii. The Difficulty of Assigned Tasks

Jarnutowski next contends that the tasks assigned to him for his EIP were "difficult by design" and "specifically assigned to Jarnutowski so that a failure to complete these tasks would be a pretext for termination."  Relatedly, he disagrees with Hall and Masotti's critiques of the tasks that he did complete for the EIP.

Pratt responds that Jarnutowski presents "no evidence that the duties assigned to other CFDs were less difficult or 'more reasonable' than those assigned to him."  His argument, according to Pratt, "offers nothing more than his opinion that the tasks were unreasonable, too difficult, and out of his control."

It is well-settled that a plaintiff may disagree with his employer about the assessments of his performance, but that does not, in turn, raise a triable issue of fact with respect to pretext.  See Ricks v. Conde Nast Publ'ns, Inc., 6 Fed. App'x 74, 78 (2d Cir. 2001) (noting that "an employee's disagreement with her employer's evaluation of her performance is

_____

that "an employee's claim of evaluation fabrication fails when . . . the employee 'signed most of the reviews that document his performance as being substandard . . . .'"  Mattera v. JPMorgan Chase Corp., 740 F. Supp. 2d 561, 576 (S.D.N.Y. 2010) (quoting Chukwurah v. Stop & Shop Supermarket Co. LLC, 354 Fed. App'x 492, 495 (2d Cir. 2009)).  Although Jarnutowski does not contend that the performance evaluations were recently fabricated, he does argue that the negative evaluations were only created to provide a documented reason for his termination other than his age.  By taking issue with only one review, however, Jarnutowski acknowledged the documentation of his substandard work performance.  Such acknowledgement lends further support for the conclusion that the negative performance evaluations were not pretextual.

insufficient to establish discriminatory intent"). Put differently, "a plaintiff's 'subjective belief that he was a better performer than his supervisor believed him to be is insufficient to prove pretext.'" McCaskill v. ShopRite Supermarket, No. 13-cv-00238(BKS/ATB), 2015 WL 419658, at *9 (N.D.N.Y. Jan. 30, 2015) (quoting Jaiyeola v. Carrier Corp., 562 F. Supp. 2d 384, 390 (N.D.N.Y. 2008)).

The court first concludes that Jarnutowski's disagreement with his supervisor's critiques or his belief that he continued to operate at a satisfactory level are insufficient for purposes of establishing pretext. Second, aside from Jarnutowski's characterization of the tasks as "impossible," he fails to present any evidence to support his viewpoint. Nothing in the record shows that the tasks were disproportionately difficult to prior tasks that Jarnutowski or other CFDs handled. Jarnutowski's conclusory statements are insufficient for purposes of showing pretext.

### iii. Other Evidence of Age Discrimination

Finally, Jarnutowski argues that the note referring to his retirement pension and the meeting in which Masotti and other supervisors discussed options to force an older employee to retire "indicate that Hall and Masotti were aware of employee ages and were conscious of the pension benefits that would vest in their older employees." Jarnutowski further contends that

these "incidents" demonstrate a "systematic attempt to push out employees who were getting older."

For similar reasons as discussed above, the court concludes that the meeting did not involve terminating an individual's employment and the notation alone does not express any discriminatory sentiment.  Further, the note read in full context indicates that Jarnutowski's supervisors aimed to help Jarnutowski.  These "incidents" fail to present sufficient evidence to demonstrate that his age was the but for cause of Pratt's decision to terminate his employment.

In sum, the court concludes that Jarnutowski cannot establish a prima facie case of age discrimination, as the record fails to demonstrate that the termination of Jarnutowski's employment occurred under circumstances giving rise to an inference of discrimination.  Even if Jarnutowski could raise an inference of age discrimination, the court also concludes that no reasonable juror could conclude that Pratt's legitimate, nondiscriminatory reason was a pretext for age discrimination, as there is no evidence to support an inference of pretext beyond Jarnutowski's conjecture and surmise.  The record indicates that Pratt terminated Jarnutowski's employment due to a number of performance deficiencies that Jarnutowski failed to correct.  Accordingly, Pratt's motion for summary judgment on count one is granted.

## II.   Breach of Contract

The complaint further alleges a cause of action for breach of oral contract.  Specifically, it alleges that "Jarnutowski received several assurances through the defendant and its agent, employees, supervisors, and representatives, who told him that he would have a job at the company as long as he wanted."  It also alleges that his positive performance evaluations created an "expectancy of continued employment with the defendant."

Pratt argues that Jarnutowski was an "at will employee" and that the parties never modified his employment agreement with an express or implied contract.  Jarnutowski responds that an implied contract existed between him and Pratt following an assurance he "received . . . from Jim Masotti at his 25th anniversary that he had a long career at [Pratt] still."

In support of his claim, Jarnutowski testified at his deposition that Jim Masotti gave him a plaque at Jarnutowski's 25th anniversary and said, "you've still got a long career still here."  When asked at his deposition if "anyone specifically sa[id] anything to [him] referencing having a job at the company as long as [he] wanted," Jarnutowski responded that "there's no guarantee."  Similarly, when asked if it was his understanding whether he had an agreement with Pratt that his employment would be guaranteed, Jarnutowski responded, "There's no guarantee in life."

"A contract implied in fact, like an express contract, depends on actual agreement."  Therrien v. Safeguard Mfg. Co., 180 Conn. 91, 94 (1980).  In Connecticut, "[t]o establish an implied contract, a plaintiff must show by a preponderance of the evidence that the other party 'agreed, either by words or actions or conduct, to undertake [some] form of actual contract commitment.'"  Cweklinsky v. Mobil Chem. Co., 364 F.3d 68, 77 (2d Cir. 2004) (alteration in original) (quoting Coelho v. Posi-Seal Int'l, Inc., 208 Conn. 106, 110 (1988)).  "Such an agreement may be based on an employer's representations to the effect that the employee will not be terminated under certain circumstances or except for good cause or that employment will continue as long as certain conditions are met."  Felekey v. Am. Tel. & Tel. Co., No. 3:02-cv-691(CFD), 2004 WL 2958468, at *4 (D. Conn. Nov. 3, 2004).

Here, the complaint alleges that Jarnutowski received "several assurances . . . that he would have a job at the company as long as he wanted."  To the contrary, only one statement in the record could possibly be characterized as an assurance.  That statement, made at Jarnutowski's twenty-fifth anniversary party, is insufficient to create an implied contract that Pratt would not terminate Jarnutowski.  By stating "you've still got a long career still here," Masotti did not commit to do anything.  This conclusion is bolstered by Jarnutowski's own

admission that there was no guarantee that he would have the job
as long as he wanted.  Further, the court cannot infer from this
statement that Jarnutowski would be terminated only under
certain circumstances or except for good cause.  Therefore,
Pratt's motion for summary judgment on count two is granted.

## III.  Promissory Estoppel

The complaint further alleges a cause of action for
promissory estoppel.  Specifically, it alleges that "Pratt &
Whitney should have reasonably expected that Jarnutowski would
rely on its promises of job security and would support him in
his work and not take any action to interfere with Jarnutowski's
ability to earn wages and benefits and is therefore stopped
[sic] from denying the enforceability of its promises."

Under Connecticut law, "any claim of estoppel is predicated
on proof of two essential elements: [1] the party against whom
estoppel is claimed must do or say something calculated or
intended to induce another party to believe that certain facts
exist and to act on that belief; and [2] the other party must
change its position in reliance on those facts, thereby
incurring some injury."  Chotkowski v. State, 240 Conn. 246, 268
(1997).  The Connecticut supreme court has held that "[a]
promise which the promisor should reasonably expect to induce
action or forbearance on the part of the promisee or a third
person and which does induce such action or forbearance is

binding if injustice can be avoided only by enforcement of the promise." D'Ulisse-Cupo v. Bd. of Dirs. of Notre Dame High Sch., 202 Conn. 206, 213 (1987) (alteration in original).

Pratt first argues that it did not make a clear and definite promise to Jarnutowski.  Pratt contends that "Masotti's casual remark is a mere expression of his *personal opinion* and reflects no present intention to commit."  Jarnutowski responds that "the assurance made by [Pratt] was more than a mere promise to 'work with' an employee, and came after 25 consecutive years of satisfactory employment with [Pratt]."

"A fundamental element of promissory estoppel . . . is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance." Stewart v. Cendant Mobility Servs. Corp., 267 Conn. 96, 104 (2003) (quoting D'Ulisse-Cupo, 202 Conn. at 213).  The Connecticut supreme court has reasoned that "[a]lthough the promise must be clear and definite, it need not be the equivalent of an offer to enter into a contract because '[t]he prerequisite for . . . application [of the doctrine of promissory estoppel] is a promise and not a bargain and not an offer.'" Id. at 105 (alterations in original) (emphasis omitted) (quoting 3 A. Corbin, Contracts § 8.9 (rev. ed. 1996)).  Clarity and definiteness, as opposed to expressions of intention, hope, desire, or opinion, are the determinative factors in deciding

33

whether a statement is a promise.  Stewart v. Cendant Mobility
Servs. Corp., 267 Conn. 96, 105-06 (2003).

Jarnutowski relies on Masotti's statement that "you've
still got a long career still here."  This statement, as
discussed above, does not provide an actual promise made to
Jarnutowski.  There is no intention to commit to indefinite
employment nor is there any indication that the statement is
anything but the expression of an opinion.  The statement is not
a clear and definite promise of employment, and thus, it cannot
form the basis of a promissory estoppel claim.

Even if the circumstances described amounted to a clear and
definite promise, Pratt also argues that the complaint fails to
allege that Jarnutowski relied on Masotti's statement.
Jarnutowski responds that he volunteered to complete the field
manual, but "[h]ad he known that this project would later
provide Masotti and Hall with alleged grounds for termination,
Jarnutowski would never have volunteered."  Even after being
placed on the EIP, "Jarnutowski believed that if he continued to
put in his best efforts at work, he would not be terminated."
Therefore, he contends that he did not seek out alternative
employment.

For purposes of a promissory estoppel cause of action,
reliance may take the form of action or forbearance.  Stewart,
267 Conn. at 112.  "[T]he asserted reliance, regardless of its

form, must result in a detrimental change in the plaintiff's position." Stewart v. Cendant Mobility Servs. Corp., 267 Conn. 96, 112-13 (2003). "'[I]f the claimed reliance consists of the promisee's forbearance rather than an affirmative action, proof that this forbearance was induced by the promise requires a showing that' . . . the plaintiff actually *would have acted* in the absence of the promise." Id. at 113 (quoting Middlesex Mut. Assurance Co. v. Walsh, 218 Conn. 681, 699-700 (1991)). Without any evidence that a plaintiff took any action or forbearance because of a promise, a plaintiff cannot establish a prima facie cause of action for promissory estoppel. See Colby v. Pye & Hogan LLC, 602 F. Supp. 2d 365, 374 (D. Conn. 2009); see also McKinstry v. Sheriden Woods Health Care Ctr., Inc., 994 F. Supp. 2d 259, 266 (D. Conn. 2014).

Here, there is no evidence in the record to suggest that Jarnutowski changed his position in reliance on Masotti's statement. Jarnutowski appears to argue that he relied on the statement by volunteering to complete the field manual, which, in turn, served as a basis for his termination. Volunteering for the project did not result in his termination, however. Instead, Jarnutowski failed to make progress on this project. His failures to show progress or to complete the project, rather than his volunteering for the project, served as a basis for the negative evaluations and eventual termination. Therefore,

Jarnutowski did not rely on the statement to his detriment for purposes of promissory estoppel.

Moreover, nothing in the record indicates that Jarnutowski would have sought other employment in the absence of Masotti's "assurance" that he "still got a long career still here." Masotti did not make this statement to convince Jarnutowski that his employment was secure.  See Stewart v. Cendant Mobility Servs. Corp., 267 Conn. 96, 114-15 (2003) (noting that a plaintiff's decision to stay at a company rather than seek other employment because of a representation that her employment would not be affected negatively was sufficient to show reliance). Instead, he made this statement in a celebratory setting.  The court concludes that Jarnutowski has failed to offer any evidence that he relied on Masotti's statement.[12]

Accordingly, Pratt's motion for summary judgment as to count three is granted.

---

[12] Although this is a motion for summary judgment, the court notes that the complaint fails to allege specifically that Jarnutowski actually relied on the assurance.  Courts in this district have recognized that dismissal is appropriate where "the Complaint fails to allege facts that could support a conclusion that the plaintiff actually relied on the statement."  Ezold v. Wellpoint, Inc., No. 06 CV00381(AWT), 2007 WL 1238725, at *6 (D. Conn. Apr. 28, 2007).  The complaint in this case merely alleges that Pratt should have "reasonably expected that Jarnutowski would rely on its promises."  It does not contain one allegation that Jarnutowski would have sought alternate employment if it were not for Masotti's comment nor does it even contain a boilerplate statement that Jarnutowski relied on the promise.  Therefore, dismissal of this cause of action is appropriate.

**IV.   Covenant of Good Faith and Fair Dealing**

The complaint further alleges a cause of action for breach of the implied covenant of good faith and fair dealing. Specifically, it alleges that Pratt breached this implied covenant "by terminating him on October 31, 2010, arbitrarily terminating him after providing him with impossible goals to accomplish, and denying him the continued benefits and earnings of his position."

Pratt argues that Jarnutowski has "alternate statutory remedies available to him for this alleged public policy violation," and therefore, "he may not bring an additional common law claim for breach of the implied covenant of good faith and fair dealing."  Pratt further contends that Jarnutowski "cannot demonstrate that an enforceable employment contract existed," that "Pratt acted in bad faith," or that the termination of his employment "was for a 'demonstrably improper reason' that violated public policy."

Jarnutowski responds that the defendant acted in bad faith by terminating Jarnutowski's employment "due to his age, both in contravention of the law and in violation of public policy." Therefore, he argues that "[b]y terminating Jarnutowski for discriminatory reasons, [Pratt] violated the implied covenant of good faith and fair dealing present in every contract."

"[E]very contract carries an implied duty 'requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement.'"  De La Concha of Hartford, Inc. v. Aetna Life Ins. Co., 269 Conn. 424, 433 (2004) (quoting Gaudio v. Griffin Health Servs. Corp., 249 Conn. 523, 564 (1999) (Callahan, C.J., dissenting)).  The Connecticut supreme court has reasoned that "[t]he cases which have established a tort or contract remedy for employees discharged for reasons violative of public policy have relied upon the fact that in the context of their case the employee was *otherwise without remedy* and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated."  Burnham v. Karl & Gelb, P.C., 252 Conn. 153, 160-61 (2000) (quoting Atkins v. Bridgeport Hydraulic Co., 5 Conn. App. 643, 648 (1985)).  Although that case involved a claim for wrongful discharge, "Connecticut courts have extended the Supreme Court's logic in Burnham to preclude claims for breach of the covenant of good faith and fair dealing where there are adequate statutory remedies through which the alleged public policy violations can be enforced."  Leichter v. Lebanon Bd. of Educ., 917 F. Supp. 2d 177, 194-95 (D. Conn. 2013).  Therefore, a plaintiff cannot bring a cause of action for breach of the implied covenant where another statutory remedy is available.  See Bagley v. Yale Univ., 42 F. Supp. 3d 332, 359

(D. Conn. 2014) (concluding that where the "*sole predicate* for [the plaintiff's] claim of breach of the implied covenant is [the defendant's] alleged violation of the anti-discrimination statutes . . . asserted in earlier counts of the complaint . . . then the adequate remedies afforded to [the plaintiff] by those statutes preclude her common law claim"); see also Leichter v. Lebanon Bd. of Educ., 917 F. Supp. 2d 177, 194-95 (D. Conn. 2013); Aukstolis v. AHEPA 58/Nathan Hale Senior Ctr., 579 F. Supp. 2d 314, 322 (D. Conn. 2008); Canty v. Rudy's Limousine, No. 04cv1678(CFD), 2005 WL 2297410, at *4 (D. Conn. Sept. 15, 2005).

In this case, Jarnutowski has brought a cause of action pursuant to the ADEA, which provides a statutory remedy for age discrimination.  The cause of action for breach of an implied covenant of good faith and fair dealing rests solely on the ground that Pratt harbored an improper purpose in terminating Jarnutowski's employment based on his age.  Therefore, Jarnutowski is precluded from bringing this claim for breach of the implied covenant of good faith and fair dealing based on the same alleged discriminatory termination.  Accordingly, Pratt's motion for summary judgment as to count four is granted.

**CONCLUSION**

For the foregoing reasons, the defendant's motion for summary judgment (document no. 31) is GRANTED.  The clerk is directed to close this case.

It is so ordered this 4th day of May 2015, at Hartford, Connecticut.

/s/
_____
Alfred V. Covello
United States District Judge
